**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

LARRY MONTEZ GIBBS,

      Petitioner,                    Civil No. 05-CV-71916-DT

v.

SHIRLEY HARRY,

      Respondent,

_____/

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Larry Montez Gibbs, ("Petitioner"), presently incarcerated at the Deerfield
Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his
conviction for one count of assault with intent to commit murder, Mich. Comp. Laws §
750.83, and one count of felony-firearm, Mich. Comp. Laws § 750.227b.  For the
reasons stated below, the petition for writ of habeas corpus will be denied**.**

### I.  BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in Oakland
County Circuit Court.  Both Petitioner and Respondent have provided the court with
extensive factual summaries of the case.  Because the facts of this case have been
repeated numerous times, they need not be repeated here in their entirety.  Therefore,
only a brief overview of the facts is required.  *See Nevers v. Killinger,* 990 F. Supp. 844,
847 (E.D. Mich. 1997).  Accordingly, the court will merely recite verbatim the relevant

1

facts regarding Petitioner's conviction from the opinion of the Michigan Court of Appeals

affirming his conviction, which are presumed correct on habeas review.  *See Monroe v.*

*Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001).

> Defendant had former confrontations with the victim, with the victim the
> aggressor.  When defendant got out of his car in the parking lot, he brought
> a gun with him.  Although defendant and the victim evidently argued briefly,
> the victim did not physically attack either defendant or his brother.  The victim
> did not have a weapon.  Defendant aimed a gun at the victim's head and
> chest and fired twice, striking the victim in the chest and grazing his neck.
> The chest injury was life-threatening.

*People v. Gibbs,* No. 219075, * 2 (Mich. Ct. App. October 19, 2001), *lv den* 649 N.W.2d

72 (Mich. 2002).  Petitioner's conviction was affirmed on appeal.  *Id.*

Petitioner subsequently filed a post-conviction motion for relief from judgment,

which the trial court denied.  *People v. Gibbs,* No. 98-163043-FC (Oakland County

Circuit Court, July 11, 2003).  The Michigan appellate courts subsequently denied

Petitioner leave to appeal. *People v. Gibbs,* No. 252537 (Mich.Ct. App. April 15, 2004),

*lv den* 690 N.W. 2d 108 (Mich. 2004).

Petitioner has now filed an application for habeas relief, in which he appears to

seek habeas relief on the following grounds:

> I.  The decision of the Michigan Court of Appeals upholding the exclusion
> of evidence of the victim's prior aggressive acts or threats which would
> have supported Petitioner's self-defense was clearly erroneous.
>
> II.  There was insufficient evidence to convict Petitioner of assault with
> intent to commit murder.
>
> III.  Imperfect self-defense is a viable defense in Michigan.
>
> IV.  The trial court admitted improper rebuttal evidence regarding the
> victim's partial paralysis.
>
> V.  Petitioner was deprived of the effective assistance of trial counsel.

2

VI.  The admission of the victim's preliminary examination testimony at Petitioner's trial, after the victim was declared unavailable because of his death, violated Petitioner's Confrontation Clause rights.

VII.  Petitioner was deprived of the effective assistance of appellate counsel.[1]

## II.  STANDARD OF REVIEW

According to 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a

---

[1]  Petitioner did not separately list all of these claims for relief in his petition, as required by Rule 2(c) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. However, the appropriate liberal construction of a *pro se* habeas petition, even though it is vague and conclusory, requires active interpretation in some cases to construe a *pro se* petition to encompass any allegation which may state a ground for federal relief. *See Franklin v. Rose,* 765 F.2d 82, 84-85 (6th Cir. 1985).  This court is willing to incorporate the arguments raised in Petitioner's state appellate court and post-conviction briefs which he attached to his petition as being part of Petitioner's application for writ of habeas corpus. *See e.g. Burns v. Lafler,* 328 F. Supp. 2d 711, 717, n.2. (E.D. Mich. 2004).  Respondent, in fact, has responded to the claims raised by Petitioner in his state appellate court and post-conviction pleadings.  Petitioner never filed a reply brief, in which he contested the Respondent's characterization of these claims.  The court will therefore liberally construe Petitioner's application for writ of habeas corpus to include the claims that he raised in his state court pleadings and which Respondent has addressed in her answer to the petition for writ of habeas corpus.

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. DISCUSSION

#### A. Exclusion of some of the victim's prior aggressive acts was not clearly erroneous.

Petitioner first claims that the state trial court improperly excluded evidence of prior threats of violence made by the victim toward Petitioner. The trial court excluded evidence of a January, 1998 shouting match between the victim and Petitioner as being too remote in time from the July, 1998 shooting incident. The trial court also prevented Petitioner's father from testifying about prior threats made by the victim to Petitioner's father about wanting to harm Petitioner. However, the trial court did permit testimony about an incident which occurred on March 6, 1998, in which the victim encountered Petitioner outside of a store in Pontiac, Michigan. The victim showed Petitioner a gun and said he would kill Petitioner if he didn't pay a debt that Petitioner owed to the victim. Petitioner thought it was a joke and went into the store. When Petitioner exited the store, he was attacked by the victim and several other men. Petitioner was in fear of his life and ran, and when he returned, his car was gone. The victim likewise admitted in his own testimony that he had asked Petitioner several times

4

for money that was owed to him and eventually "whipped his ass."

The Michigan Court of Appeals rejected Petitioner's claim, in that the facts of the case did not support a theory of self-defense, because Petitioner had no reasonable belief that his life or his brother's life was in imminent danger and because Petitioner could have left the area without the use of deadly force. *Gibbs,* Slip. Op. at * 1. Under Michigan law, a victim's prior threats may be excluded as hearsay if the facts of the case do not support a self-defense theory. *Id.* (citing *People v. Griner*, 186 N.W.2d 800 (1971)).

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or

5

confusion of the issues. *Id.*

Moreover, under the standard of review for habeas cases as enunciated in Section 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

In the present case, Petitioner was permitted to present evidence that the victim confronted him in March of 1998, showed Petitioner a gun and threatened to kill him, and physically assaulted Petitioner with the help of other men. The victim confirmed that he had "whipped his ass." Because the evidence that was admitted gave Petitioner a sufficient foundation to establish that he shot the victim in self-defense or in defense of others because he feared for his safety or his brother's safety, based upon the victim's prior assaultive behavior, the exclusion of the additional, cumulative evidence to bolster his self-defense or defense of others claim did not deprive Petitioner of a fair trial. *See Davis v. Burt,* 100 Fed. Appx. 340, 350 (6th Cir. 2004); *See also McCullough v. Stegall,* 17 Fed. Appx. 292, 295 (6th Cir. 2001) (holding that the due process rights of the petitioner, who was convicted of murder despite claiming self defense, were not violated by exclusion of testimony regarding threats that the victim may have made to petitioner's family because petitioner was able to testify regarding personal threats or whether he had other personal knowledge of threats); *Calmese v. Bowersox,* 2 Fed. Appx. 669, 670 (8th Cir. 2001) (exclusion of evidence

6

concerning victim's prior violent acts toward defendant's nephew, which was offered to bolster similar evidence, did not deny murder defendant a fair trial).

Moreover, as discussed in greater detail when addressing Petitioner's sufficiency of evidence argument below, the facts of this case did not support Petitioner's theories of self-defense or defense of others.  Therefore, any exclusion of evidence of prior threats by the victim toward Petitioner was harmless error at best. *See e.g. Cortez v. Garcia,* 130 Fed. Appx. 131, 134-35 (9th Cir. 2005).

**B. Sufficient evidence supports Petitioner's conviction.**

In his second claim, Petitioner contends that there was insufficient evidence to convict him of assault with intent to commit murder, because the prosecution failed to prove beyond a reasonable doubt that Petitioner intended to kill the victim and failed to disprove that Petitioner acted in self-defense.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this court must determine whether the state court's application of the *Jackson* standard was reasonable.  *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002).  Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge,* 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002) (internal citations omitted).

Under Michigan law, the elements of assault with intent to commit murder in Michigan are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *See Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001) (*citing to People v. Hoffman*, 570 N.W. 2d 146, 150 (Mich. Ct. App. 1997)). A conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill. *Id.* An intent to kill, for the purpose of the crime of assault with intent to commit murder, need not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from the facts and evidence in determining the existence of an intent to kill. *See People v. Taylor*, 375 N.W. 2d 1, 7-8 (Mich. 1985). The use of a lethal weapon will support an inference of an intent to kill. *Steele,* 157 F. Supp. 2d at 740.

Under Michigan law, one acts lawfully in self-defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, n.1 (6th Cir. 1999) (*citing People v. Heflin*, 456 N.W.2d 10 (Mich. 1990)). This right to act in self-defense also includes the right to defend another person. *Johnigan v. Elo*, 207 F. Supp. 2d 599, 609 (E.D. Mich. 2002) (*citing People v. Curtis*, 18 N.W. 385, 387 (Mich. 1884); *People v. Wright*, 181 N.W. 2d 649, 651 (Mich. Ct. App. 1970)). However, in killing another person in self-defense, a defendant is not entitled under Michigan law to use any more force than is necessary to defend himself. *See People v. Kemp,* 508 N.W.2d 184, 187 (Mich. Ct. App. 1993). In addition, under Michigan law, before using deadly force in self-defense, a person has a duty to retreat if it is safely possible to do so. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 602

8

(E.D. Mich. 2001) (citing *People v. Mroue*, 315 N.W. 2d 192, 194 (Mich. Ct. App. 1981)).

        When viewed in a light most favorable to the prosecution, the evidence in this case supported Petitioner's conviction for assault with intent to murder.  When Petitioner exited the car in the parking lot where the shooting took place, he brought his gun with him.  Although Petitioner and the victim argued, the victim did not physically attack either Petitioner or his brother.  It was undisputed that the victim did not have a weapon.  Petitioner aimed his gun at the victim's head and chest and fired the gun twice, hitting the victim in the chest and grazing his neck.  The chest wound was life-threatening.  Evidence that Petitioner intentionally pointed his loaded handgun at the unarmed victim, aimed at his head and chest, pulled the trigger, and fired two shots without warning was sufficient evidence from which a reasonable factfinder could find beyond a reasonable doubt that Petitioner actually intended to kill the victim.  *See Johnigan,* 207 F. Supp. 2d at 608.  Moreover, in light of the fact that the victim was unarmed when Petitioner shot him, there had been no actual struggle or scuffle between Petitioner and the victim prior to the shooting, and Petitioner took no steps to retreat or otherwise avoid the victim, a reasonable factfinder could find beyond a reasonable doubt on the basis of this evidence that Petitioner did not honestly and/or reasonably fear that he was in imminent danger of death or serious bodily harm from the victim. *Id.* 609.  Therefore, Petitioner's claim that his conviction was not supported by constitutionally sufficient evidence because the prosecution failed to disprove his defense of self-defense and failed to prove that he acted with an intent to kill is without merit. *Id.* at p. 610.

9

### C. Petitioner's state law claims of imperfect self-defense and improper rebuttal evidence are not persuasive.

The court will consolidate Petitioner's third and fourth claims for judicial economy. In his third claim, Petitioner argues that Michigan should adopt the theory of imperfect self-defense. In his fourth claim, Petitioner contends that the trial court allowed improper rebuttal evidence.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

The Michigan Supreme Court has not yet recognized the doctrine of imperfect self-defense as a defense. *See People v. Posey*, 590 N.W.2d 577 (Mich. 1999). The Michigan Court of Appeals, however, has recognized imperfect self-defense as a qualified defense that can mitigate a murder charge to voluntary manslaughter. This defense is available where the defendant would have been entitled to raise the theory of self-defense had he or she not been the initial aggressor. *People v. Kemp*, 508 N.W.2d at 187. A defendant is not entitled to invoke the doctrine of imperfect self-defense if he or she initiated the confrontation between the victim and himself or herself with the intent to kill or do great bodily harm, even if, at the time he or she killed the victim, the defendant honestly and reasonably believed that his or her life was in

10

danger. *Id.* The imperfect self-defense theory is also unavailable where the defendant makes a decision to kill the victim without being in a position where it was immediately necessary. *People v. Butler*, 483 N.W.2d 430, 433 (Mich. Ct. App. 1992). Finally, imperfect self-defense is not available if the defendant responded to the victim's aggression with excessive force. *Kemp*, 508 N.W.2d at 188.

It is not clear whether Petitioner is arguing that the Michigan courts should clarify whether they recognize the doctrine of imperfect self-defense or whether the doctrine of imperfect self-defense should should be extended to his case, even though Petitioner used excessive force against the victim. In either case, Petitioner should not prevail.

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002). Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes. " *See Lakin v. Stine,* 80 Fed. Appx. 368, 373 (6th Cir. 2003) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86 (1986)). The circumstances under which a criminal defense may be asserted is thus a question of state law. *Id.* Under Michigan law, Petitioner would not be entitled to invoke the doctrine of imperfect self-defense, in light of the fact that he used excessive force against the victim. Because the facts in this case suggest that Petitioner acted with excessive force in repelling any alleged aggression by the victim, he was not entitled under Michigan law to an instruction on

11

the imperfect self-defense doctrine and would not be entitled to the issuance of a writ of habeas corpus on that basis.  *Johnson,* 159 F. Supp. 2d at 605.  Nor would Petitioner be entitled to habeas relief on his claim that Michigan has refused to extend the doctrine of imperfect self-defense to situations where a defendant reacted to the victim's alleged aggression with excessive force.

In his fourth claim, Petitioner contends that the trial court improperly admitted rebuttal testimony regarding the victim's partial paralysis, because it did not disprove, explain, or contradict any evidence offered by Petitioner in his defense case.

A claim involving the admission of improper rebuttal testimony in a state criminal trial is an issue of state law that would not entitle a habeas petitioner to relief.  *See Henderson v. Norris,* 118 F.3d 1283, 1286 (8th Cir. 1997); *Pickens v. Lockhart,* 802 F. Supp. 208, 217 (E.D. Ark. 1992); *White v. Withrow,* 2001 WL 902624, * 7 (E.D. Mich. June 22, 2001).  Because the admission of this improper rebuttal evidence did not violate a specific federal constitutional guarantee, Petitioner is not entitled to habeas relief on his fourth claim.

### D.  Petitioner's claims of ineffective assistance of trial counsel and violation of his Confrontation Clause rights are not persuasive.

Petitioner next raises several ineffective assistance of trial counsel claims.  For the purpose of judicial economy, the court will also discuss Petitioner's related sixth claim involving the alleged improper admission of the victim's testimony from his preliminary examination.

Respondent argues that several of Petitioner's ineffective assistance of counsel claims, as well as his Confrontation Clause claim, are procedurally defaulted because

12

they were not properly presented in his direct review to the Michigan Court of Appeals. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).   "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the court finds that the interests of judicial economy are best served by addressing the merits of these claims.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must normally satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  Id.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Id.* at 689.  Second, the defendant must show that such performance prejudiced his defense.  Id.

Petitioner's initial claim, which he raised for the first time in his post-conviction motion, is that he was denied his right to counsel when the trial court denied his request for substitute counsel on the first day of trial without first inquiring from Petitioner the reasons why he wanted his retained counsel to be replaced.

13

"A defendant is required to show good cause for a request to substitute counsel and to do so in a timely manner." *See United States v. Williams,* 176 F.3d 301, 314 (6th Cir. 1999).  In determining whether a court abuses its discretion in denying a motion for substitute counsel, a reviewing court should consider the timeliness of the motion, the adequacy of the trial court's inquiry into the defendant's complaint, whether the conflict between the attorney and the client is so great that it resulted in a total lack of communication which prevented an adequate defense, and a balancing of these factors with "the public's interest in the prompt and efficient administration of justice." *Id. (citing United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996)).

The court first notes that Petitioner made this request for the substitution of counsel on the first day of trial.  The Fourth Circuit has noted that "a continuance request for the substitution of counsel made on the first day of trial is clearly 'untimely under all but the most exigent circumstances.'" *See United States v. Reevey,* 364 F.3d 151, 157 (4th Cir. 2004) (internal quotation omitted).  Petitioner does not explain why he waited until the first day of trial to voice any concerns about his retained counsel.

Second, and contrary to Petitioner's assertion, the trial court engaged in an adequate inquiry of Petitioner's reasons for his dissatisfaction with counsel.  After Petitioner's retained counsel informed the trial court about Petitioner's desire to have another attorney handle his case, the trial court judge asked counsel if he felt competent going forward.  Counsel replied that he was able to proceed, but would not feel comfortable if Petitioner felt that he was not doing a good job.  The trial court then conducted a bench conference with the attorneys.  Later, after ruling that the victim's March, 1998 attack against Petitioner could be admitted at trial, the trial court permitted

14

counsel to discuss the matter with Petitioner and his mother.  After the lunch recess, there was no mention made of Petitioner's request for substitute counsel.

There is "no mechanistic constitutional requirement" that a trial court conduct an extensive inquiry into the reasons why a defendant wishes to discharge his counsel when the defendant offers no specific complaints concerning his lawyer's representation.  *See Flowers v. Fair,* 680 F.2d 261, 262 (1st Cir. 1982).  Moreover, when a request for substitution of counsel is made, a trial court need only make formal inquiries into requests which are "seemingly substantial" on their face.  *See Colon v. Smith,* 723 F. Supp. 1003, 1010 (S.D.N.Y. 1989).  In this case, Petitioner merely informed the trial court, through counsel, that he was not comfortable with his counsel and did not want to go to trial with him.  These reasons are insufficient to support a motion for substitute counsel.  *See United States v. Woodard,* 291 F.3d 95, 107 (1st Cir. 2002) (defendant's statements that her relationship with her attorney was "strained," that it was "not working out," and that she "would just feel a little bit more comfortable with another relationship" were insufficient to merit the substitution of counsel); *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) ("A defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient" to justify the substitution of counsel).  Because counsel's comments to the court did not point out any specific ground regarding why substitute counsel should be appointed for Petitioner, the trial court's failure to make a full inquiry into this matter was not error. *See United States v. Sullivan,* 431 F.3d 976, 981 (6th Cir. 2005).

Moreover, if the reasons proffered for the substitution of counsel are insubstantial and the defendant receives competent legal representation at trial, a

15

court's failure to inquire sufficiently or to inquire at all constitutes harmless error.  *See U.S. v. John Doe No. 1,* 272 F.3d 116, 123 (2nd Cir. 2001); *See also United States v. Wilhite,* 108 Fed. Appx. 367, 369-370 (6th Cir. 2004) (applying harmless error standard to the denial of the motion for the substitution of counsel).  As discussed in greater detail below, Petitioner's ineffective assistance of trial counsel claims are without merit.

Finally, the denial of Petitioner's motion for the substitution of counsel, which was made on the first day of his trial, did not violate his constitutional rights to effective assistance of counsel.  Petitioner has presented no specific facts showing that his relationship with his court-appointed counsel had disintegrated into irreconcilable conflict or that communication between Petitioner and his court-appointed counsel had broken down irretrievably.  *See Mack v. Singletary,* 142 F. Supp. 2d 1369, 1377-78 (S.D. Fla. 2001).  In the present case, the facts fail to show an irreconcilable conflict resulting in a total lack of communication which prevented an adequate defense.  The state courts' denial of Petitioner's claim regarding his motion for substitute counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Lacy v. Lewis*, 123 F. Supp. 2d 533, 551 (C.D. Cal. 2000).  The court will therefore proceed to review Petitioner's individual ineffective assistance of trial counsel claims.

Petitioner first claims that counsel was ineffective for failing to move for a directed verdict.  Because the evidence was sufficient to prove the elements of assault with intent to commit murder, counsel's failure to move for a directed verdict did not amount to ineffective assistance of counsel. *Maupin v. Smith*, 785 F.2d 135, 140 (6th Cir. 1986); *See also Hurley v. United States,* 10 Fed. Appx. 257, 261 (6th Cir. 2001).

The court will discuss Petitioner's next two ineffective assistance of counsel

16

claims together.  Petitioner contends that counsel was ineffective for failing to object to the improper rebuttal testimony concerning the victim's partial paralysis or his failure to call surrebutal witnesses to rebut this testimony.  Petitioner contends that he was prejudiced by the improper rebuttal testimony, as well as by counsel's failure to offer surrebuttal witnesses, because it left the jury with the impression that he had attacked a helpless man, thereby weakening his defense of self-defense.

As the Michigan Court of Appeals indicated in rejecting this claim, the jury was made aware of the victim's violent tendencies and his ability to attack Petitioner by evidence presented at trial.  The jury would therefore have not been left with the impression that the victim was helpless, even if he suffered from partial paralysis. Moreover, as indicated above, Petitioner's self-defense claim was undercut by the amount of excessive force used in this case.  Petitioner is not entitled to habeas relief on this portion of his ineffective assistance of counsel claim, because he has failed to show that he was prejudiced by counsel's failure to object to the improper rebuttal testimony or for failing to call a surrebuttal witness to rebut this testimony. *See e.g. Johnson v. Wolfe,* 44 Fed. Appx. 702, 719 (6th Cir. 2002).

In his sixth claim, Petitioner alleges that his Sixth Amendment right of confrontation was violated when the prosecutor was permitted to use the victim's preliminary examination testimony in lieu of his live testimony, due to the fact that the victim had died prior to trial.  Petitioner further claims that counsel was ineffective for failing to object to the use of the victim's preliminary examination testimony.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

17

witnesses against him . . . ." U.S. Const. amend. VI.  The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847-48 (1990).  The Confrontation Clause does not prevent hearsay from being admitted into evidence at trial when the declarant is unavailable to testify at trial and the statement (1) falls within a firmly rooted exception to the hearsay rule, or (2) contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Lilly v. Virginia*, 527 U.S. 116, 124 (1999) (*citing Ohio v. Roberts*, 448 U.S. 56, 66 (1980). [2]

Former testimony of an unavailable witness is a firmly rooted hearsay exception. See Mich. R. Evid. 804(b)(1); Fed.R.Evid. 804(b)(1); *United States v. Reed,* 227 F.3d 763, 769 (7th Cir.2000); *United States v. McKeeve*, 131 F.3d 1, 9 (1st Cir.1997); *Ecker v. Scott*, 69 F.3d 69, 71 (5th Cir.1995).

When prosecutors seek to admit a nontestifying witness' preliminary hearing testimony, the Confrontation Clause requires two things.  First, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial.  Second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the

---

[2]   The decision of *Crawford v. Washington,* 541 U.S. 36 (2004), which overruled *Ohio v. Roberts* and its progeny, would be inapplicable to Petitioner's case, because his conviction became final before the U.S. Supreme Court decided *Crawford.  See Dorchy v. Jones,* 398 F.3d 783, 788 (6th Cir. 2005).  In any event, the victim's preliminary examination testimony would be admissible even under the holding in *Crawford. See e.g. Carranza v. Smith,* 121 Fed. Appx. 199, 202,  n.4 (9th Cir. 2005).

defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *McCandless v. Vaughn*, 172 F.3d 255, 265 (3rd Cir. 1999).

In the present case, Petitioner does not dispute that the victim was unavailable for trial. The victim's "intervening death undeniably thwarted all 'good-faith efforts of the State to produce him'" for trial. *See Havey v. Kropp,* 458 F.2d 1054, 1057 (6th Cir. 1972). Instead, Petitioner claims that the victim's preliminary examination testimony should not have been admitted, because it lacked adequate indicia of reliability.

The victim's preliminary examination testimony bore adequate indicia of reliability because it was made under oath, Petitioner and his counsel were present, and the victim was subject to cross-examination. *California v. Green*, 399 U.S. 149, 165-66 (1970); *Dres v. Campoy*, 784 F.2d 996, 1001 (9th Cir. 1986); *Eastham v. Johnson*, 338 F. Supp. 1278, 1280 (E.D. Mich. 1972). Moreover, even if counsel did not take full advantage of the opportunity to cross-examine the victim at the preliminary examination, he had an unlimited opportunity to do so. Therefore, the admission of the preliminary examination testimony at Petitioner's trial did not violate his right to confrontation. *See Glenn v. Dallman,* 635 F.2d 1183, 1187 (6th Cir. 1980); *Havey,* 458 F.2d at 1057. Because there was no violation of the Confrontation Clause in the admission of the victim's testimony, counsel was not ineffective for failing to object to its admission. *See e.g. Lowery v. Anderson,* 69 F. Supp. 2d 1078, 1113 (S.D. Ind. 1999).

Petitioner next appears to argue that counsel failed to interview or call witnesses who would have supported his self-defense claim. Because the evidence shows that Petitioner's self-defense claim would not likely have succeeded as a matter of law, for

19

the reasons stated above, Petitioner is unable to show prejudicial error on the part of counsel for failing to call additional witnesses to support to his claim of self-defense. *See Lusk v. Dugger*, 890 F.2d 332, 336-337 (11th Cir. 1989). Moreover, because this proposed testimony would have been cumulative of other corroborating evidence in support of Petitioner's self-defense claim, Petitioner has failed to show that he had been deprived of the effective assistance of counsel. *Cf. Yi v. Gearinger,* 139 F.Supp.2d 1393, 1413-14 (N.D. Ga. 2001) (state habeas court's determination that habeas petitioner was not deprived of the effective assistance of counsel as a result of appellate counsel's decision to abandon a claim that trial counsel did not effectively argue self-defense was not an unreasonable determination of the facts, or contrary to, or an unreasonable application of, clearly established federal law, where trial counsel's alleged omission was cumulative of other corroborative evidence).

As a related claim, Petitioner contends that counsel was ineffective for failing to argue or offer evidence in support of his "defense of others" claim, even though the trial court instructed the jury on this defense, as well as on the defense of self-defense. Because Petitioner's "defense of others" claim is undermined by the excessive force used by him against the victim in this case, Petitioner is unable to show prejudicial error on the part of counsel for failing to argue or to present evidence to bolster his claim that he acted in defense of another. *See Winters v. Miller*, 274 F.3d 1161, 1166-67 (7th Cir. 2001). Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

### E.  Petitioner did not receive ineffective assistance of counsel on appeal.

Petitioner lastly claims that appellate counsel was ineffective for failing to raise

20

some of his ineffective assistance of trial counsel claims, as well as his Confrontation Clause claim, on his direct appeal.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). An attorney's failure to present a nonmeritorious issue on appeal does not constitute ineffective assistance of counsel. *Daniel v. Overton*, 845 F. Supp. 1170, 1176 (E.D. Mich. 1994).

Because Petitioner has failed to show that his trial counsel was ineffective, Petitioner is unable to establish that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims on his appeal of right that Petitioner raised for the first time in his post-conviction motion. *See Johnson v. Smith,* 219 F.Supp.2d 871, 883 (E.D. Mich. 2002). Because there was no Confrontation Clause violation, Petitioner was not prejudiced by his appellate counsel's failure to raise this issue on appeal. *See Loeblein v. Dormire,* 229 F.3d 724, 729 (8th Cir. 2000). Accordingly, Petitioner is not entitled to habeas relief on his final claim.

## IV.  CONCLUSION

IT IS ORDERED that the Petitioner's May 16, 2005 "Petition for Writ of Habeas Corpus" [Court Docket Entry # 1] is DENIED.

                                      S/Robert H. Cleland
                                      ROBERT H. CLELAND
                                      UNITED STATES DISTRICT JUDGE

Dated:  October 31, 2006

21

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 31, 2006, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522